CASTOR SANTANA ET AL., Plaintiffs and Appellants, *v.* PEDRO ORCASITAS MUÑOZ, Defendant and Appellee.

No. 6269. Argued June 6, 1934.—Decided December 10, 1934.

*Angel A. Vázquez* for appellant.  *R. H. Blondet* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The plaintiff are the heirs of Mrs. Ricarda Pereira. They claim ten thousand six hundred dollars from defendant Pedro Orcasitas Muñoz on the grounds afforded by the following facts:

At the time of her death—November, 1918—Ricarda Pereira was the owner of a rural property of thirty-three acres *(cuerdas)* in size, located in the Ward Hato Nuevo in the municipality of Gurabo, that she mortgaged in favor of defendant Pedro Orcasitas Muñoz to answer for four hundred dollars, interest and one hundred and fifty dollars for costs, in case of judicial recovery.

On May 19, 1919, that is, after the death of Ricarda Pereira and after the maturity of the debt secured by the mortgage, defendant Orcasitas filed this summary mortgage foreclosure proceeding to recover the mortgage credit. The basic facts were set forth in the petition and the court concluded that the proceeding that culminated in the adjudication of the mortgaged property to the creditor was null and void.

"A. Because said summary proceeding was filed in May, 1919, against a dead person, that is against Ricarda Pereira;

"B. Because the writ demanding payment does not contain the statutory warning concerning what would happen to the debtor in case he failed to pay the amounts claimed within the term of 30 days;

"C. Because the heirs composing the heirship of Ricarda Pereira, owners on May 19, 1919, who are the plaintiffs set forth in the first averment of this complaint, were not served with the writ demanding payment, but in spite of it their property was sold at public auction without giving them an opportunity to defend at all;

"D. Because $76 were included in the judgment of sale as interest from October 19, 1917, to May 19, 1919, which amount was not owed by the heirs of Ricarda Pereira, because the mortgage earned interest only during the life of the contract, that is, up to October 19, 1918;

"E. Because since said mortgage foreclosure proceeding is an *ex parte* matter *(de jurisdicción voluntaria)* and since it has been prosecuted as such *ex parte* matter, the then and there foreclosing creditor and now defendant, Pedro Orcasitas Muñoz, did not attach to the final decision in that matter, nor did the clerk of that Court cancel, the internal revenue stamp required by law.

"F. Because the writ demanding payment issued by the clerk of that Court on May 21, 1919, in the execution of that final decision is null and void because it was issued in consequence of a writ demanding payment that is also null and void;

"G. Because the judgment of sale was also rendered in consequence of a writ demanding payment that is null and void, and further, because in said judgment the recovery of $76.00 in interests. was ordered, which were not owed by the heirs of the deceased, Ricarda Pereira. The recovery of $150.00 for disbursements, costs, and attorney's fees was also ordered, which were set forth in the mortgage deed as the maximum amount recoverable in that concept, but which was not owned by the aforesaid heirs of said ancestor to the foreclosing creditor Mr. Orcasitas and which was subject to l'quidation for those reasons, and the same were not liquidated nor approved because the corresponding memorandum was not filed before the District. Court of Humacao.

"H. Because the writ ordering the execution of the judgment. was the result of a writ demanding payment that was null, as well as of a demand for payment also null, and of a judgment of sale further also null and void."

It is also alleged in the complaint that defendant Orcasitas sold the property that was adjudicated to him to Juan Solá, who in turn sold it to Pedro Crespo for $2,400; and as the property was recorded and no defect appeared from the registry to invalidate said contracts, the property was. lost to the plaintiffs who only had left their personal action against the defendant, which is the one they are exercising in the instant suit.

The damages claimed are assessed in the ninth paragraph of the complaint as follows:

"At the time the property described *supra* was sold in adjudication of payment by the marshal of the District Court of Humacao to the foreclosing creditor and now defendant Pedro Orcasitas Muñoz on August 11, 1919, said property was worth at least $4,600, that is, $200 per acre (*cuerda*); in the twelve years elapsed from August 11, 1919 to August 11, 1931, during which years the heirs of the deceased ancestor Ricarda Pereira have been deprived of the material possession and usufruct of said property, said heirs, who are the plaintiffs herein have failed to receive the amount of $6,000, that is, $500 yearly, the amount of sugar cane and other rents produced by said property."

The complaint has been verified and ends praying that judgment be rendered holding the summary mortgage fore-

closure proceeding null, ordering the defendant to pay to the plaintiffs $10,600 with interest in concept of damages, and imposing the payment of costs on the defendant.

The defendant requested certain particulars stricken out of the complaint. He was unsuccessful so then he filed his answer adopting the following method to draft it: The complaint contains ten paragraphs. The answer contains an equal number. Each numbered paragraph of the answer begins thus: "Denies generally and specifically, for lack of information and belief, that" and he follows exactly the wording of what was alleged in the corresponding paragraph of the complaint. As we have totally transcribed the ninth paragraph of the complaint, we shall also transcribe totally the ninth paragraph of the answer and thus one will have a clearer idea of the method followed. It reads:

"Denies generally and specifically for want of information and belief, that at the time the property described *supra* was sold in adjudication of payment by the marshal of the District Court of Humacao to the foreclosing creditor and now defendant Pedro Orcasitas Muñoz, on August 11, 1919, said property was worth at least $4,600, that is, $200 per acre (*cuérda*); in the twelve years elapsed from August 11, 1919, to August 11, 1931, during which years the heirs of the deceased ancestor, Ricarda Pereira, have been deprived of the material possession and usufruct of said property, said heirs, who are the plantiffs herein, have failed to receive the amount of $6,000, that is, $500 yearly, the amount of sugar cane and other rents produced by said property."

The answer ends with the following special defenses:

"*First*.—That the compla'nt does not state facts suficient to constitute a cause of action. (paragraph 6, Section 105 of the Code of Civil Procedure).

"*Second*.—That the conjugal partnership cons'sting of Pedro Orcasitas Muñoz and his former wife Angela Ubarri, was the owner of the mortgage to which the annulled summary foreclosure proceeding in the instant case refers to; that Mrs. Angela Ubarri died the _____day of_____the year 19_____, and that her sons Jorge, Luis, Pedro, Concepc'ón, Angela, Mercedes, María Teresa,

Edith and Rafaelina Orcasitas, and her husband Pedro Orcasitas Muñoz have been subrogated to all her hereditary rights.

"That in case the complaint were sustained, defendant Pedro Orcasitas alleges that the conjugal partnership constituted by his wife Angela Ubarri, was the owner, from whom he purchased one half of the produce of the liquidated debt amounting to $646 as per the sixth averment of the complaint upon the liquidation of the partnersh'p, plus the amount assigned to him and that corresponds to him according to law. Also the usufruct from the property of his legitimate deceased wife aforementioned, plus the stipulated interests on one half of the amount of said loan from the date they were liquidated up to the date the judgment that may be rendered in this case is liquidated, the disbursements for the upkeep of the realty and the taxes paid to the public treasury up to the day said property was conveyed by the conjugal partnership composed by the defendant and his former legitimate wife, to the subsequent purchasers.

"That in case the nullity of the proceeding were decreed by this act'on, the amounts set forth in the proceeding paragraph could be compensated, since they would be liquid, recoverable and matured and the plaintiffs would owe them to the plaintiffs."

The plaintiffs requested certain particulars of the answer stricken out. They also requested judgment on the pleadings. The court did not grant the motion. The case went to trial and the judgment appealed from was rendered dismissing the complaint on the merits without special condemnation of costs.

The appellants assign four errors in their brief, committed, in their opinion, by the district court in refusing to strike out certain particulars from the answer, in not rendering judgment on the pleadings in their favor, in dismissing the complaint on the ground that the heirs of the deceased wife of the defendant were not made parties to the suit, and in dismissing the complaint on the ground that the defendant did not introduce any evidence in respect to the reasonable value of the property and its rents.

Before passing to discuss the errors assigned it seems convenient to state that there is no question concerning the

nullity of the summary mortgage foreclosure proceeding. In the statement of the case and in the opinion the trial court arrived to the conclusion that said proceeding was null, and void, if not on all the grounds set forth, at least on some of them. And the defendant-appellee himself states textually in his brief:

"For the sake of argument we admit the nullity of the services in the recovery of the mortgage credit as was done by the trial judge."

■ Let us examine the first error. We are familiar with the so called special defenses set forth in the answer. The plaintiffs requested the court to strike it out, and now they allege that the court erred in ruling to the contrary.

We do not agree. Even though imperfectly the non-joinder of parties was alleged in the answer, and it is allowed by Section 108 of the Code of Civil Procedure which expressly provides that "When any of the matters enumerated by Section 105 do not appear upon the face of the complaint, the objection may be taken by answer." The issue could not have been raised by demurrer because it did not appear upon the face of the complaint that the wife had any heirs.

■ Furthermore, although confusedly and imperfectly, compensation is alleged as a defence which lies in cases of this nature in accordance with what we have decided over and again.

■■ Arguing its second assignment of error the appellant, correctly in our opinion, maintains that the answer offers a typical example of a negative pregnant, and, therefore, the truthfulness of the facts alleged in the complaint should have been deemed admitted and judgment on the pleadings sould have been rendered in his favor. He cites the case of *Somonte* v. *Mimoso*, 27 P.R.R. 368, wherein this Court decided, transcribing from the syllabus, that:

"When the denial of the respondent in his answer of the essential averment of the complaint is in the form of a negative pregnant, judgment should be entered for the petitioner on the pleadings."

Summarizing the decisions in point Corpus Juris states:

"A negative pregnant is such form of a negative expression as may carry with it an affirmative or at least an implication of some k'nd favorable to the adverse party. A negative pregnant may arise from a too literal denial of the allegations of the declaration or complaint, or a negative pregnant may arise from a denial which is too large, tendering issue on more than 's alleged.

"Ordinarily a negative pregnant does not raise a material issue, and the consequences are the same as when, for any other reason, and answer admits plaintiff's allegations w'thout denying or avoiding them. An objection to a negative pregnant will not be regarded favorably by the court where it is not made before trial, especially where it does not appear that plaintiff has been misled; and where it clearly appears from other parts of the answer that the allegations formally admitted by reason of the negative pregnant are in fact denied, the answer may be held good; and especially is this true when the fact is elsewhere expressly denied." 49 C. J. 270.

Here the issue was raised from the very beginning of the trial, and the district court itself finally admitted in its statement of the case and opinion, that because of the form in which the ninth paragraph of the complaint was denied, the same was admitted. And the form used to deny all the other allegations of the complaint is the same that was used to deny the ninth one, as we explained previously.

We are dealing, in reality, with a conjunctive denial *in ipsis verbis,* that has been considered by the Supreme Court of Colorado in the case of *City of Boulder* v. *Plains Loan, Realty & Investment Co.,* 224 Pac. 233, 234, as a negative pregnant equivalent to an admission.

" 'The law refuseth double pleading,' said Lord Hobart, in *Slade* v. *Drake,* Hob. 295, 'and negative pregnants, though they be true, because they do inveigle and do not settle judgment upon one point.' " cited by the Circuit Court of Appeals, Sixth Circuit through Justice Lurton in the case of *United States* v. *Lurkin,* 153 Fed. 113, 115.

One should not lose track of the fact that we are dealing in this case with a verified answer that requires, in the pur-

view of the express provisions of law (Section 110 of the Code of Civil Procedure) that the denial of each allegation controverted must be specific and be made positively or according to information and belief of the defendant. If the defendant has no information or belief upon the subject sufficient to enable him to answer an allegation of the complaint, he may so state in his answer and place his denial on that ground.

The reason for the rule was set forth in an ancient California case—*Doll* v. *Good,* 38 Cal. 290, cited in *Bartlett Estate* v. *Fraser et al.,* 105 Pac. 130, as follows:

"The rules of pleading are intended to prevent evasion and to require a denial of every specific allegation in a sworn complaint in substance and in spirit, and not merely a denial of its literal truth."

Now then, as the answer further contained the defenses we have already seen, the district court acted correctly in refusing to render the judgment prayed for. *Berríos* v. *Garáu,* 46 P.R.R. 799.

█ In order to decide properly the third assignment of error, that is, the one by virtue of which it is argued that the court erred in dismissing the complaint on the ground that the heirs of the deceased wife of the defendant had not been joined as parties, it is necessary to begin by ascertaining the nature of the action exercised in the case at bar.

It is requested that a certain judicial proceeding by virtue of which a property belonging to the plaintiffs unduly and illegally passed unto the hands of the defendant, be declared null and void. It is expressly prayed that as the property is at present in the hands of a third person, the defendant be ordered to pay to the plaintiff as damages, the value of the property and of its rents and profits from the date of the ouster.

This being so, one may well maintain that is is the action authorized by Article 175 of the Regulations for the Execution of the Mortgage Law, as follows:

"All other claims that may be brought, either by the debtor or by third persons in possession and other persons interested, including those involving the nullity of the title or of the proceedings, or the maturity, truth, extinction or amount of the debt, shall be heard in the proper plenary action, without ever producing the effect of suspending or interfering with the execution proceedings."

And in a certain way Section 38 of the Mortgage Law itself provides that:

"In any case in which the resolutory or rescissory action can not be brought against a third person in accordance with the provisions of this article the proper personal action may be brought for the recovery of damages from the person who may have caused them."

Against whom can it be exercised? Undoubtedly against the person that caused the damages now claimed.

The appellants sustain that the defendant was the only person liable for them. The latter argues that the conjugal partnership in whose favor the mortgage executed, in whose name the action was begun, for whom the property was purchased, and for whose benefit it was sold while the husband acted as its administrator, is the one liable. The husband further maintains that since said conjugal partnership was dissolved by the death of the wife, whatever responsibility she might have had rests at present on her heirs in proportion to their respective hereditary portions.

The mortgage foreclosure proceeding was filed by the defendant in his own name, but by virtue of the evidence introduced it is concluded that the credit secured by the mortgage was an asset of the conjugal partnership, that the property adjudicated to the husband was also adjudicated to the wife, and that the same was sold during her life.

If this suit had been brought during her life, it could have been filed against the husband only; but had he been ordered to pay any damages, the payment would have been a charge on the conjugal partnership. This is evident.

What change does the death of one of the partners introduce in this clear juridical relationship?

The conjugal partnership is expressly regulated by law. Upon dissolution, it must be liquidated. The law provides the rules for it. An inventory is taken. After the debts, charges and obligations of the partnership are paid, the capital of the husband and of the wife is liquidated and paid to the extent allowed by the inventory. What remains is the capital of the conjugal partnership which will be equally divided between the surviving spouse and the heirs of the other one, or between the heirs of both.

The law provides nothing in regard to the person that should answer for the performance of future obligations that may be requested after the dissolution, and which were not borne in mind at the time of liquidation.

In Manresa's commentaries we find merely this statement: "After the capital of the wife is paid, and before returning his to the husband, the law provides that the debts, charges and obligation of the conjugal partnership must be paid. These charges are specifically set forth in Sections 1408 to 1411. *Naturally, we are dealing with those pending performance at the time the conjugal partnership is dissolved.*" 9 Manresa, *Comentarios al Código Civil*, 602, 4th ed. It says nothing as regards obligations that may arise afterwards.

Since the Code provides that the conjugal partnership shall be governed by the rules provided for the contract of partnership in all those matters not contrary to the rules expressly provided for the same, we have examined said rules and we have found nothing, either, expressly provided in that particular.

Is the obligation extinguished with the partnership? Are the surviving spouse and the heirs of the deceased, or the heirs of both, liable only for the obligations pending performance and for the actions instituted at the time of the liquidation? An affirmative answer for all the cases would not, in our opinion, conform with the fundamental concept of justice.

We are of opinion that the question should be decided by applying the provisions of the code concerning inheritance.

Succession is the transmission of the rights and obligations of a deceased to his heirs, it includes not only those rights and obligations existing at the time of his death, but also the property belonging to the succession after the same is open, and the charges and obligations inherent therein. The inheritance includes all the property rights and obligations of a person which are not extinguished by his death. Sections 599, 601 and 608 of the Civil Code, 1930 ed.

If the facts occurred during the existence of the conjugal partnership and if the partnership was answerable for their consequences, it seems logical that when liability is demanded after the dissolution of the partnership, that the action should be addressed against its successors, who, in the instant case, are the surviving spouse and the heirs of the deceased in proportion to their respective inheritance portions.

We have not stopped to consider whether we are dealing with an obligation extinguished by death because its subsistence appears to us clear.

Manresa states, upon commenting Section 659 of the Spanish Civil Code, the same as Section 608 of ours, 1930 ed., in part, what follows:

"These obligations include not only those contracted by the ancestor by agreement, but also those resulting from his fault or negligence provided they are not extinguished by death, and the obligation to satisfy them descends to the heir. For instance, a dispossession proceeding through a restitutory interdict (*interdicto de recobrar*) is filed against the heirs of the trespasser—provided the action has not prescribed—not only for the purpose of the rest'tution of the *res,* but also for the payment of costs, damages and the devolution of .fruits, to which the latter should be condemned according to law." 5 Manresa, *Comentarios al Código Civil* 301, 4th ed.

Hence, we are of opinion that the trial was correct in holding that the defendant in this case is not the only one liable for the performance of the obligation demanded, and

that his sons Jorge, Luis, Pedro, Concepción, Angela, Mercedes, María Teresa, Edith, and Rafaelina Orcasitas and Ubarri are also liable.

■ Now, then, the district court further concluded in the statement of the case and the opinion that "the nonjoinder of said heirs as defendants constitutes an error that will preclude it from rendering judgment against Pedro Orcasitas Muñoz," and we do not agree to that.

It is true that after having been warned by the defendant the plaintiff could have asked that the remaining heirs be made parties to the suit, and even the court itself, *motu proprio,* could have exercised the authority vested on it by Section 74 of the Code of Civil Procedure, and should have done it if it was of opinion that final judgment in the controversy could not be rendered in their absence. But we are of opinion that even though they did not so act, the suit could continue against the defendant, of course, limiting his liability to that which corresponds to him as successor of the conjugal partnership.

The fact that in the initial petition of the summary foreclosure proceeding the defendant engaged to indemnify the debtor for any damages attributable to his malice or negligence in the statement of the facts of the case and in the circumstances that the court must weigh in order to authorize and continue the proceeding, does not change the nature of the responsibility. The defendant apparently spoke in his own name, but in fact and in law he was acting as administrator of the conjugal partnership, the owner of the credit they tried to collect.

■ It only remains to examine the fourth error assigned, that is, the one concerning the dismissal of the complaint for lack of evidence concerning the damages claimed.

The trial court held to that effect in its statement of the case and opinion:

"(c) It is merely alleged in the complaint, as regards the payment of damages, that at the time the property was sold by adjudication

in payment to the foreclosing creditor and now defendant Pedro Orcasitas Muñoz, said property was worth at least $4,600, that is, $200 per acre (*cuerda*); and that during the twelve months (*years*) elapsed from August 11, 1919 to August 11, 1931, wherein the heirs of ancestor Ricarda Pereira have been deprived of the material possession and usufruct of said property, they have failed to receive the amount of $6,000, that is, $500 per year, the amount of sugar cane and other fruits produced by said property.' Because of the manner in which this allegation is denied in the answer, paragraph after paragraph, we are of opinion that it has been admitted. *Somonte* v. *Mimoso,* 27 P.R.R. 368. And the plaintiffs thus relying on the fact so alleged, offered no evidence thereon at the time of the trial. *Veve* v. *Municipality of Fajardo,* 43 P.R.R. 810. But could the court grant the damages requested taking as only ground the fact so admitted?

"What a defendant should pay as damages for a property he acquired illegally and that he can not return because it is in the hands of a third person, is not its total minimum value at the time of the sale, this being a conclusion, but its fair market value at the time the owner was deprived of it; and where civil fruits are claimed it is not sufficient to allege that they were produced and were not received to a certain amount, but it is necessary to allege and also to prove the market value of said fruits when they were produced and the expenses incurred in producing them, for otherwise grounds would exist to determine the profits. *Arvelo* v. *Banco Territorial y Agrícola,* 29 P.R.R. 996.''

As one may see, the court decided that the ninth averment of the complaint was admitted, and that this being so, the plaintiffs did not need to offer any evidence concerning it, but upon examining in its own right concludes that it does not set forth facts sufficient to serve as grounds to the judgment requested.

In our opinion the allegation is sufficient as regards the price of the property, and it is not as to the claim for the fruits.

What should be returned is the reasonable value of the realty when the same can not be returned, but we think that the words "minimum value" sufficiently express that idea.

And even though perhaps the assessed value is excessive, we must admit it since it was accepted.

As regards the fruits, it is the net amount produced. The profit really derived by virtue of their existence is what can be claimed and must be returned, and as this allegation is worded it seems that what is claimed is the gross income. At least the question is doubtful, and in that doubt, and bearing in mind all the concurring circumstances, we are of opinion that the conclusion of the district court in this respect must be sustained.

Since the return of something lies, the necessity arises to consider the question of compensation.

It was alleged in the manner we already know, but the defendant offered no specific evidence respecting it. For that reason, one may only take as grounds the debt and its interests, of course, also in the portion that corresponds to the defendant, that is, in one half.

By virtue of all that has been set forth the judgment appealed from must be reversed and a new one rendered ordering the defendant to pay to the plaintiffs $2,300, one half of the value of the property foreclosed, and the plaintiffs to pay to the defendants $200, one half of the amount secured by the mortgage, with interest from May 19, 1919, to the date payment is made, and the defendant may deduct what the plaintiffs must pay him from what he must pay them, and the judgment shall be considered to have been executed through the payment of the balance left. Each party must pay his own costs in view of the concurring circumstances in the case.

Mr. Justice Wolf concurs in the result.

Mr. Justice Hutchison dissents because he is of opinion that the defendant should be ordered to pay to the plaintiffs the total value of the property foreclosed.